All right, I will go ahead and call the next case as Council is getting settled in. It is United States v. Amanda Smith, number 245096. Mr. Gifford, you may proceed. Thank you, Your Honor. I will be requesting to reserve two minutes of time to respond to the government's argument as well. I've raised four issues before the court, and the fourth one having two subparts. The first one is that the district court erred when it did not grant a new trial based off this circuit's unpublished ruling in United States v. Shell, in which that court found that the use of assimilating the Oklahoma statute for the purpose of child abuse was improper. This decision did not come out until shortly after my client, Ms. Amanda Smith, was sentenced in this matter. Counsel, was that argument available to her before the trial in this case? Couldn't she have made that same argument then? Yes, Your Honor. If, you know, I guess if I had analyzed it and thought of raising that issue, and again, I didn't foresee that issue because, number one, it had been a common practice the way we'd always practiced, been charged that way. It's the way the government's always charged it. When the new issue came up where somebody raised it around the same time the court issued it, it seems that it would be fair that Ms. Smith should be able to benefit from it. Again, this is within the 14 days of her conviction becoming final at that time, and 10 days afterwards, we raise the issue of the law of the 10th Circuit. And again, when you look at it, would the government be prejudiced in it? There's several things. One, is there neglect on my part? Yes, I can make arguments on areas of the law that have not changed yet, but I have to be able to foresee them. So when someone changes the law, then I, as her attorney, have to have a duty to raise that obligation to the court, which I did under the Shell case. In this case, by that change in the law, which would have changed the... Well, counsel, I mean, we all understand that Shell's unpublished, so it isn't quite a change in the law, is it? Well, I think it has changed the charging decisions by the United States government. The 10th Circuit has expressed, at least in the unpublished decision, that the use of the assimilation of the child abuse statute, as happened here, would not be appropriate to use... Yeah, but it wouldn't... the case isn't binding on us, correct? Yes, Your Honor. And it wouldn't have been binding on the district court either. Correct, correct. I mean, but it would be... obviously, it would be a wise argument for the district court to consider the law as the 10th Circuit, even though it's an unpublished decision by another panel, to at least take into consideration as to how the 10th Circuit may view the use of that statute. Your Honor, moving on to the second issue, and it's almost... it's easier to discuss than it was actually to brief it, is the use of whether or not the federal government now has jurisdiction over non-natives who commit crime in Indian country after the U.S. Supreme Court's decision in Castro Huerta. Castro Huerta was about states' rights and the state's ability to prosecute crimes committed by non-Indians in Indian country within the state's borders, and that's what Castro Huerta was about. What Castro Huerta did not analyze, discuss, or even mention at all is the federal government has jurisdiction that's limited, and Congress wrote a statute at Title 18, Section 1152, in which they use the language of within the sole and exclusive jurisdiction of the United States. Now, there's general laws of the United States, such as bank robbery is a federal crime. It doesn't matter where it happens. The federal government can prosecute it. Drug trafficking as well. You don't need 18 U.S.C. 1152 to prosecute those federal crimes. Those federal crimes are applicable everywhere. In 1152, it doesn't matter. Those are general federal crimes. Here, it talks about the crimes that are within the sole and exclusive jurisdiction of the United States. And with that being said, once Castro Huerta gave the state of Oklahoma concurrent jurisdiction, thinking about the state's rights, then it took away the federal government's rights to prosecute these cases. Federal courts are courts of limited jurisdiction. When Congress writes a statute, it's presumed that they know what they're saying when they wrote it. Could I just stop you there? Could you say that again about Castro Huerta taking away the federal courts' jurisdiction? Is that – Yes. Could you just say that again? I'm not sure I followed your statement. So Castro Huerta was about the state's right to prosecute non-natives in Indian country. And they gave the state that right. And that was the first time since 18 – I think 1892, I believe, that they had that ability to do that. With Castro Huerta giving that concurrent jurisdiction to the state, well, now the federal government, when it prosecutes these crimes under 1152, 1152 discusses or states that these crimes have to be within the sole and exclusive jurisdiction of the United States. So now that Oklahoma has jurisdiction, the state has jurisdiction, the federal government no longer has something that's within the sole and exclusive jurisdiction. It's now shared. So unintentionally, when they gave the state of Oklahoma concurrent jurisdiction, the federal government, being courts of limited jurisdiction, as guided under 1152, that has to be under the sole and exclusive jurisdiction, the federal government, federal courts lost jurisdiction over non-natives committing crimes against natives in Indian country. All right. So if I'm understanding what you just said, does that mean no more prosecutions in federal court under 1152? Until Congress goes back and amends their own statute because, again – Well, that's probably a yes or no question. I'm sorry. Yes, your honor. Okay. So if the U.S. Attorney's Office has a case arising in Indian country, the plaintiff – or excuse me, the defendant is non-Indian, the victim is Indian, they can't charge that in federal court after Castro Huerta. That's how you're reading that case? Yes, your honor. Okay. Although the Supreme Court never really said that, did they? No, no, they never did, and it was not before them. In fact, I even went back and read the entire argument transcript of Castro Huerta. And again, in the final opinion, they used the language that the federal and state governments will have concurrent jurisdiction, but what it didn't do is it didn't address the language of within the sole and exclusive jurisdiction of the United States. Okay. Well, that's a rather dramatic contraction of federal court jurisdiction, correct? Absolutely. I absolutely agree. Has any court accepted that argument? This is a novel argument. Your honor, to my knowledge, this has never been raised. No one has ever brought this up. I've raised it in, I guess, two district court cases. And how did that go? Oh, it just said, usually just one line, Castro Huerta says the federal and state government shall have concurrent jurisdiction. But nowhere, it's never addressed what about this language about the federal government for these types of cases can do these cases within the sole and exclusive jurisdiction of the United States. And if we're adopting, you know, state law, and I do discuss the, you know, I do an analysis in my brief talking about dissimilated crimes that act and how this court's handled that and how it interprets federal enclaves. But really, it just kind of goes back to the very simple question of, you know, what, where in the law do we have within the sole and exclusive jurisdiction of the United States for under 1152? As of now, there's not a single, there's not a single crime that is now within the sole and exclusive jurisdiction of the United States. It now all belongs to the state and the federal government. And so, if the federal government wants to, you know, unless the federal government wants to prosecute, if it's a bank robbery, yes, they'll always have jurisdiction. Child pornography, yes. Those laws are already written. Those are federal statutes that apply everywhere. And that, but except for anything outside of that, 1152, they're going to be limited to those crimes that are going to be within the sole and exclusive jurisdiction. Okay. Let me just ask you, it seems, though, that this argument goes to your client's conviction under 1152, right? Right. And this is a different argument than your argument about the aiding and abetting, because the aiding and abetting against her was for the offense charged against Joel Smith under 1153. So they're really separate arguments, correct? Yes. Yes, they're separate. Okay. And as to the aiding and abetting, what I wanted to ask you about that is, under your view, and we're leaving aside your 1152 argument for now, may a non-Indian ever be charged for aiding and abetting an Indian defendant in an 1153 prosecution? Is that ever possible? Are you saying that can never happen? It cannot, because they simply, under 1153, there's no jurisdiction for a non-Indian to be prosecuted under 1153. Let me put the question more generally. For a defendant to be convicted of an aiding and abetting offense, does the prosecution have to prove each and every element of that offense against that defendant? Obviously, the government would have to prove every element against the primary defendant, but does the government have to prove every element of the offense against the aiding and abetting defendant, assuming that there is proof of aiding and abetting? I don't know if that was clear at all, but you tell me if you understood my question. I think I do, Your Honor. I think if they're arguing that Mrs. Smith is guilty by aiding and abetting her husband, they have to prove every element of her husband's case against her, as far as that he's Native, that he committed these offenses, as well as proving that she aided and abetted. Okay, maybe another way of putting it, do they have to prove that she is an Indian to aid and abet the 1153 charge against him? Oh, yes. That's the only way they would be able to have jurisdictions if they've shown that. Okay, so now I'm looking for your best case for that. Yes, Your Honor, and I want to point out just one analogy. If I aided and abetted a service member on active duty in a crime, and they get court-martialed, the Uniform Code of Military Justice has no jurisdiction over a civilian in a military court-martial, so if I aided and abetted that person, I can't be court-martialed because there's no jurisdiction over me as a non-active duty member. Now, they can allege that somebody aided and abetted the service member, but they can't ever prosecute me in a military courtroom because there's no jurisdiction over me, and that's the exact analogy on that. As far as my case law on the aiding and abetting, again, I have to look out of circuit on that. Well, I don't want to take up too much of your time if it's not at your fingertips. I take it there's something in your brief. There is, Your Honor. At page 15 of my brief, I cite to United States v. Graham. It's a 2009 8th Circuit case at 572 F. 3rd 954, and they discussed this exact same scenario. It is also discussed in another 8th Circuit case of United States v. Norquay, N-O-R-Q-U-A 905 F. 2nd 1157, and that's Penn site 1159-363, a 1998 circuit case. In that case, I also cite to a 7th Circuit case from 1984, United States v. Torres, 733 F. 2nd 449 found at 453 Note 1. I discuss that and cite to those at page 15 of my brief at document 41. Can I ask you a question about this whole issue? So the government's taking the position that because the special verdict form found your client guilty as a principal, that this issue is just a non-issue, basically. And as I read your reply brief, you didn't really grapple with the special verdict form idea, and it almost read to me that this argument sort of depends on what we do with your argument in your reply that was sort of that this argument's depending on what we do with your section 2 of your brief argument. Yes, yes, your Honor. Basically, the verdict form was very straight to the point, but because they charged aiding and abetting, there was no special verdict to say she's guilty because by aiding and abetting her husband in count one versus he was guilty of this crime because he aided and abet her under her statute. So I do fall under that as well. Your Honor, I see that I'm out of time, and while I ask for the reserve time, I'll forego that. There's one more issue. With the court's permission, if I can have a brief 30 seconds to address that last issue before the court in regards to the victim impact statements. All right, we'll do, but a brief 30 seconds. Yes, sir. Or a real 30 seconds. Okay. My brief discusses the victim impact statements. Why that's important is it was given to me the night before. I did not have the opportunity to respond to them, prepare for them. I didn't have transcripts from trial to even contradict them, and I was ineffective in being able to address and contradict those. For example, the victim impact statement by Deputy Burnett, she talks about certain things like this injury was hot to touch. That's at page 564 in the transcript at page 715. There's no mention of touching anything. There was other issues in which throughout the transcript I could have contradicted each of these victim impact statements from their prior testimony. There was new information given in these victim impact statements that did not ever come out of trial. It was never listed anywhere else and given it to me the night before, and I did properly object. I filed an objection. I tried to object to the PSR writer, and I was told— Counsel, I'm going to interrupt your 30 seconds, but very quickly. Your point is well taken. My concern is that the district court said ultimately didn't rely on any of that. And so what are we—how should we be thinking about that, even notwithstanding the fact that you may not have had a meaningful amount of time to rebut it? It was not excluded. While the court did say that, there should have been at least some ruling about that. It was turned over late. It should have been provided with the PSR so there could be a proper response to it. And even though the court says I'm not going to consider it, the court never said I'm excluding it or I'm granting your motion to it. And I asked for a continuance, to reset the sentencing just so that I could address those, and that was denied. With that being said, thank you much. Thank you for the extra 30 seconds, Your Honors. Thank you, Counsel. Ms. Alam? Your Honors, Lina Alam for the United States. I'd like to start by talking about aiding and abetting. The Standifer case from the Third Circuit, cited in my brief from 1979, makes clear why Section 2 allows prosecution of a non-Indian defendant who aids and abets an Indian who has violated the Major Crimes Act. Specifically, Standifer explains that in 1951, when Congress amended Section 2 from someone who aids and abets is a principle to someone who aids and abets is punishable as a principle, Congress explained their reasons for doing that and said, this section is intended to clarify and make certain the intent to punish aiders and abettors, regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted. Not only did the Third Circuit apply that to uphold the conviction of someone who aided and abetted an IRS employee, in that case, the IRS employee was acquitted. And nonetheless, the Supreme Court addressed that issue and affirmed, recognizing implicitly that Section 2 allows a charge or a conviction against an aider and abetter who may not be charged under the statute, but that conviction may stand even when the person to whom the statute applies directly, the principal, is acquitted. So, because the Supreme Court has recognized that Section 2 allows conviction of people who can't be charged under the statute, I think Graham in the Eighth Circuit has wrongly decided, and my brief discusses, I think at some length, why Graham came to this erroneous conclusion. Although Graham cites Standefer, it just holds that based on the Eighth Circuit's decision in Norquay, that an aider and abetter cannot be charged with aiding and abetting a crime under the Major Crimes Act. But Norquay doesn't hold that. Norquay, in dicta, mentions that the Indian defendant in Norquay, that his co-conspirator, who was prosecuted in federal court, or in state court rather, could not have been prosecuted in state court. That wasn't the holding in Norquay. It was pure dicta. But Graham took that and ran with it without addressing the specific congressional purpose between changing the language in Section 2 from is a principal to is punishable as a principal. So, what is the federal jurisdictional hook into the defendant in this case on this count? It is, well, on, I guess it depends which count, but as to counts three and four, it's 1152. Fair enough. And for all the reasons stated in my brief, this defendant, Ms. Smith, was not convicted on counts one or two. This is just a question of whether she could have been charged and convicted as an aider and abetter to counts one and two. But the facts in the verdict form here make clear that that did not occur. No, I get that. But I'm just, I'm still, you know, it seems to me that the, I get the whole idea of Congress was trying to sweep people into this as aiders and abetters who were incapable of committing the crime themselves. But, you know, we have other competing interests here of somebody who we generally wouldn't even be able to bring into federal court on this aid, you know, otherwise. Well, and again, obviously here we would for other reasons, but as to counts one and two, the jurisdiction, the federal court's jurisdiction arises because the crime took place on Indian country and here had an Indian victim. So that's the federal interest. And it was the crime itself was committed by a principal who was Indian. And that's where the source of that federal jurisdiction occurs. It almost sounds to me like you're arguing that his Indian status can be imputed to her as an aider and abetter. I think his ability to be charged under a given statute can be imputed to her as an aider and abetter. And I think that's precisely what Congress intended in clarifying section two. Okay, fair enough. I have another question about this. And that has to do with your argument that she was convicted under counts three and four as evidenced by the special verdict form. I mean, I'm not sure I got an answer to my question from your colleague, but I was looking at the reply brief and he doesn't seem to grapple with that position that you took. Can you opine on that? Sure. I think as Mr. Gifford I think recognizes he has to win on his Castro Huerta argument to avoid my response on his aiding and abetting argument. And let me just very briefly address the Castro Huerta argument. I think with all due respect, I think Mr. Gifford has misread Castro Huerta. It explicitly explains that, quote, the phrase sole and exclusive jurisdiction in the General Crimes Act is, quote, only used in the description of the laws which are extended, end quote, to Indian country, not to, quote, the jurisdiction extended over the Indian country. So it's not the Supreme Court precisely recognized in Castro Huerta that when the phrase sole and exclusive jurisdiction is used in the General Crimes Act, it is extending the jurisdiction over federal enclaves, places within the sole and exclusive jurisdiction of the United States, to the Indian country. Not that Indian country must be in the sole and exclusive jurisdiction of the federal courts. And that's, I think, the crux of Castro Huerta. Moving back to the first issue in counsel's brief, I'm not going to address the untimeliness. I think that's fully briefed here. But my principal argument is that Shell was wrongly decided. And we touched on this a little bit in talking about Ms. Smith's co-defendant, and the scope of the Oklahoma child abuse statute and the scope of the federal assault statutes. Shell collapses the Lewis test into one element by holding that if the defendant's conduct is punishable by any enactment of Congress, then the state statute may not be assimilated. That's just not what Lewis stands for. And looking at this, Ms. Smith's conduct makes clear that her offense cannot be assimilated under either Lewis prong. First, for the reasons we discussed, some of the abusive conduct in this case, the forcing the child to wear a diaper until injured, maliciously torturing a child and causing injury, is not assaultive conduct. It doesn't require an affirmative touching. And so for those reasons, the first prong of Lewis is not met by Ms. Smith's conduct. So it should be, that could be the end of the inquiry. But the more important argument here, and honestly in Shell as well, is that child abuse, as covered by the Oklahoma child abuse statute, is not what Congress intended to cover by adopting the federal assault statutes. And one of the reasons we know that is because in a parallel area of law, in the Major Crimes Act in 2006, Congress added child abuse and neglect to the list of crimes that may be charged against Indian defendants under the Major Crimes Act. And then, years later, Congress added any felony under Section 113 to that same enumeration of offenses under the Major Crimes Act. And when they did that, they did not remove the words felony child neglect and abuse, because it understood, as I think this court has held, that there is no general federal child abuse or neglect statute. And so by leaving both of those things in there, Congress made clear that they understood felony child abuse and neglect and felonies under Section 113, assaulted felonies, to be different. Even though 113A7 addresses, at least in part, some assaults against people under 16. Counsel, what role in this case is the government's position that Shell was wrongly decided to have? It is one of, I think, four ways that we could prevail on that first count. But it is an extraordinarily important issue going forward for the reasons that Mr. Gifford, I think, expressed. The government has an interest in protecting Indian children, whether they be assaulted by Indians, in which case it would be chargeable under the Major Crimes Act, or whether assaulted by non-Indians, in which case, under our reading, and I think a correct reading of Lewis, they could be charged under 1152 under the General Crimes Act. That said, because Shell specifically exempted child neglect and said that they were not considering that issue, and because 843.5 is plainly divisible, this court could affirm on the basis of the child neglect conviction alone and hold explicitly that the Oklahoma Statute 843.5C may be assimilated. But I think that's implied by Shell. We think the broader holding that all of the abuse provisions of 843.5 may be assimilated. But you agree, and maybe I'm missing the point here, but you agree that to even engage with Shell's unpublished decision and grapple with its holding and reasoning, we would have to agree that it is intervening law for purposes of the timeliness of the post-trial motions, right? I don't, I'm not sure that's true. Certainly, the way that Mr. Gifford has raised this argument is only in the district court's failure to consider those issues. However, Mr. Gifford could have raised the underlying arguments in Shell before this court on direct appeal. And that's why, and frankly, to not have done so might have been ineffective. And so, because this issue of whether federal child abuse may be assimilated is critical, both in the general area of Indian law and to this case in particular. To maybe some future version of a component of this case, but it's not directly at issue before us unless we overlook timeliness, right? I think that's arguable, but at the end of the day, some explanation of whether Mr. Gifford should have raised the Shell issue earlier or should have raised it before this court could be addressed by a holding that the underlying premise of Shell is simply wrongly decided. But you said there were four ways, and that's one way. So, could you briefly summarize the other three ways? Sure. The first is that the district court didn't abuse its discretion in finding that the fourth motion to dismiss or motion for new trial was untimely. It was filed more than two years after Ms. Smith's first motion to dismiss, nearly a year after the post trial motion to dismiss. The prejudice was clear. And for the reasons I think you discussed with Mr. Gifford, the reasons for delay were not sufficient to justify. And so the district court arguably did not abuse its discretion in declining to hear an untimely motion. The second is that Shell is wrongly decided. The third is that Shell, any Shell error is harmless because 843.5 is divisible and Shell doesn't apply to, explicitly recognizes they're not addressing acts of omission like neglectful abuse. And here, Ms. Smith, unlike Mr. Shell, was charged with child neglect as well as child abuse. And, okay, that's actually three ways. So, I think there are two prongs in the Shell. Shell was wrongly decided, but we will leave it at that. And I think with my 43 seconds, I will just say that to the extent that the district court's decision to even read the letters sent by three trial witnesses before sentencing Ms. Smith could possibly exceed the vast discretion we give district courts to consider anything at sentencing. If it exceeded that discretion, it nonetheless did not violate Ms. Smith's rights because the district court explicitly said that it was not going to consider that to the extent that... Did the government represent that these letters were from victims? Should we understand that these are victim statements under 3771, like the understanding of crime victim? Or were these letters more in service of information at sentencing and therefore we would understand them under a different statutory framework? I think we should understand them under a different statutory thing. The only... But did the government say they were victims? Did the government tell the district court these are victims? It's not clear. These were submitted not by, I think, the attorneys, but by the victim witness coordinators who sometimes collect letters and forward them on to the probation office, which then submits them to the court. And so all of that, it's not clear exactly how they were characterized, but certainly the district court didn't understand them to be victim impact letters. And for that reason, any error here is certainly harmless. For all those reasons, we would ask this court to affirm. Thank you. Thank you, counsel. The case will be submitted. Thank you for your argument this morning, Mr. Gifford. You may be excused. Ms. Elam, we'll give you a half hour.